UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**TAMMY MINTER**,                                    Civil Case No. 3:11-CV-00113-KI

               Plaintiff,

                                 OPINION AND ORDER

                 v.

**COMMISSIONER of Social Security**,

               Defendant.


      David B. Lowry
      9900 SW Greenburg Road
      Columbia Business Center, Suite 130
      Portland, Oregon  97223

            Attorney for Plaintiff

      S. Amanda Marshall
      United States Attorney
      District of Oregon

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97201-2902

Jeffrey R. McClain
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington  98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Tammy L. Minter brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner and

remand for a finding of disability.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is

carried out by the Administrative Law Judge ("ALJ").  The claimant has the burden of proof on

the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520

and 416.920.  First, the ALJ determines whether the claimant is engaged in "substantial gainful

activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise,

the ALJ proceeds to step two and determines whether the claimant has a medically severe

impairment or combination of impairments.  A severe impairment is one "which significantly

limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R.

§§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of

impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the

impairment is equivalent to one of a number of listed impairments that the Commissioner

acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d),

416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is

conclusively presumed to be disabled.  If the impairment is not one that is presumed to be

disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, the ALJ makes a finding of "not disabled" and disability benefits are denied. 20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is unable to perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2004) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that Minter had severe impairments of asthma, migraine headaches, obesity, major depressive disorder, post traumatic stress disorder ("PTSD"), and panic disorder with agoraphobia. The ALJ also found that these impairments, either singly or in combination,

were not severe enough to meet or medically equal the requirements of any of the impairments

listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  After considering the record, the ALJ

concluded that Minter could perform sedentary work with some postural and environmental

limitations; needed simple unskilled work that does not require intense concentration, although

she can remain on task; and can only have minimal contact or interaction with co-workers and

brief and superficial contact with the general public.  Based on the testimony of a vocational

expert, the ALJ found that Minter could work as a table worker, assembler, and hand stuffer and,

thus, was not disabled as defined by the Act.

## FACTS

Minter, who was 43 years old at the time of the ALJ's decision, only stayed in school

through the sixth grade.  She has work experience as a cook at an assisted living facility,

telephone operator, and trailer court worker.  Minter claims she has been disabled since

January 1, 2002 due to sciatica, chronic obstructive pulmonary disease ("COPD"), migraines, and

several mental health problems including depression and panic attacks.  Minter also suffers from

obesity; she is five feet six inches tall and has weighed as much as 380 pounds, as documented in

the medical records.

Minter has difficulty leaving her home other than to visit her mother for a few hours.

When Minter did try to work, she would miss two or three days a week because of panic attacks.

Minter claims to have lost every job she has had because of missing work.

Minter lived alone at the time of the hearing.  Her sister did most of Minter's shopping,

housecleaning, laundry, and cooking.  Minter spends her day sitting in her house, watching

television, and texting her daughters.  She describes her day as, "I just sit there and waste away."

Page 5 - OPINION AND ORDER

Tr. 35.  Minter claims that in the month prior to the hearing, she cooked herself one box of noodles, did her dishes once, did no other housework or laundry, and had problems grooming herself because she is too depressed to do it.

Physically, Minter has pain in her back and legs, and suffers from migraine headaches once or twice a month.  She made numerous visits to emergency rooms, with some visits resulting in multi-day hospitalizations, due to breathing problems, severe headaches, and chest pain.

## DISCUSSION

I.    Minter's Credibility

The ALJ provided several reasons for her conclusion that Minter's statements about her symptoms were not entirely credible, to the extent the statements were inconsistent with the residual functional capacity assessment.  Minter disputes the ALJ's reasoning and argues the ALJ failed to properly assess her credibility.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom.  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  Id.  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence

undermines the testimony." Holahan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).

General findings are insufficient to support an adverse credibility determination, and the ALJ

must rely on substantial evidence. Id. "[U]nless an ALJ makes a finding of malingering based

on affirmative evidence thereof, he or she may only find an applicant not credible by making

specific findings as to credibility and stating clear and convincing reasons for each." Robbins v.

Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

A.    Obesity

Minter contends the ALJ implied that her inability to lose weight impugned her

credibility, even though obesity treatments have a low success rate and her obesity was not

relevant to the case.  The ALJ noted that F.N.P. Lallande encouraged Minter to lose weight by

providing a 1,500 calorie diet and suggesting three meals a day.

The Commissioner concedes that this reason runs afoul of Orn v. Astrue, 495 F.3d 625,

637-38 (9th Cir. 2007), which holds that a "failure to follow treatment for obesity tells us little or

nothing about a claimant's credibility[.]"  Thus, I will ignore this reason and address the others

the ALJ gave.  The fact that the ALJ improperly considered some reasons for finding plaintiff's

credibility undermined does not mean the ALJ's entire credibility assessment is improper.  If

there is substantial evidence supporting the ALJ's conclusion on credibility and "the error does

not negate the validity of the ALJ's ultimate [credibility] conclusion, the error is harmless."

Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (internal

quotation omitted).

Page 7 - OPINION AND ORDER

      B.    <u>Smoking</u>

Minter makes a similar argument concerning the fact that she has not been able to stop smoking cigarettes and also smokes medical marijuana.  She contends smoking marijuana is less harmful than addiction to narcotic pain medication.  Minter further argues the ALJ did not determine if she actually failed to follow prescribed treatment, as required by agency rulings.

The Commissioner contends Minter's argument is a competing interpretation of the record which is insufficient to overturn the ALJ's reasonable interpretation of the evidence.

The ALJ reasoned that Minter had a history of non-compliance with medical advice, including that she smoked medical marijuana five times a week and half a pack of cigarettes daily even though she needed oxygen at times to help her breathe and her health care providers encouraged her to stop smoking.

I do not read <u>Orn</u> to apply to smoking because the case's analysis relies on a Social Security Ruling, SSR 02-1p, which strictly addresses obesity.  Moreover, Minter's situation varies from Orn's because Minter's health care providers not only suggested that she stop smoking, they prescribed Chantix to assist her efforts.  There is little evidence that Minter sought alternatives to medical marijuana for her back pain, including such nonaddicting treatments as physical therapy.  The ALJ's reasoning is sound.  <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008) (unexplained failure to seek treatment or to follow a prescribed course of treatment is a credibility factor); <u>Smolen v. Chater</u>, 80 F.3d, 1273, 1284 (9th Cir. 1996) (same).

      C.    <u>Compliance with Other Medical Treatments</u>

Minter disputes the ALJ's conclusion that she was not credible because she failed to comply with other treatment recommendations.  Minter claims she stopped using the inhaled

steroid to treat her asthma because her prescription had expired. She argues that this fact is not relevant to her credibility.

The Commissioner argues that Minter's prescription did not expire, but instead she let the prescription run out and did not obtain any more medication.

It is unclear from the medical records whether Minter's prescription had expired or whether the prescription had more refills available which she did not obtain. I do not assign any importance to this distinction. Minter gave no explanation for why she did not contact her doctor if necessary to get more of the medication. The result is that Minter did not used her prescribed inhaled steroid for a month prior to going to the emergency room for shortness of breath. This is a legitimate reason for the ALJ to discredit Minter's subjective symptom testimony.

    D.    <u>Activities Outside the Home</u>

Minter contends the ALJ erred by concluding that she left her home more often than she admitted. She claims the dates in the record do not support the ALJ's conclusion, and that her work record is too sparse to support a statement that her impairments did not prevent her from working.

The Commissioner claims Minter exaggerated or was inconsistent in some of her statements. As the ALJ noted, Minter reported in June 2007 that she had not left the house since October 2006. But on November 21, 2007, Minter complained of shoulder pain caused by working out in a gym. That is five months, however, after Minter reported she had been unable to leave the house. Her anxiety and depression levels could have changed significantly during the interim. This is not a clear and convincing reason to discredit Minter.

The ALJ also noted that Minter worked outside her home from 2002 through 2007.  The ALJ supported this claim with a FICA Earnings work sheet which shows that Minter earned nothing in 2002 and 2003, less than $350 in each of 2004 and 2005, $8,625 in 2006, and $1,999 in 2007.  Minter's earnings are too low in 2002 through 2005 to provide substantial evidence for the ALJ's conclusion.  In the first four months of 2006, Minter worked for her father as a property manager at a mobile home park for two hours a day, seven days a week.  She worked as a telephone customer service operator in October 2006 for two weeks, 35 hours a week, and as a caregiver for two months in late 2006 for 24 hours a week.  Minter's work schedule in 2007 is not evident from the record.  The ALJ is correct, however, that Minter consistently left her home for part-time work in 2006, which contradicts her reports of anxiety and depression so severe they caused her to stay home.  Thus, when appropriately limited, the ALJ's reason is clear and convincing.

    E.    <u>Limited Mental Health Treatment History</u>

The Commissioner notes the ALJ relied on Minter's limited treatment history for her psychological condition.  Minter contends the ALJ relied on the treatment record prior to her alleged onset date of January 1, 2002.  According to Minter, she has consistently treated her mental impairments with medication since her onset date.

The ALJ correctly noted that Minter returned to Columbia Community Mental Health on August 23, 2004.  The intake counselor recommended one-on-one counseling and possible inclusion in a group to learn distress tolerance skills.  Her last contact with the agency was September 17, 2004, only three weeks later.  The agency discharged Minter after she did not follow through with counseling and ignored an outreach letter and phone call.  This failed

attempt at counseling is well after Minter's alleged onset date of January 1, 2002.  Although

Minter did take medication for her mental impairments, the ALJ's conclusion that she has

significant gaps in treatment is supported by Minter's failure to take advantage of counseling

after she initially sought it out.

I am aware of the case law discussing failure to seek treatment for mental conditions. For

example, "appellant may have failed to seek psychiatric treatment for his mental condition, but it

is a questionable practice to chastise one with a mental impairment for the exercise of poor

judgment in seeking rehabilitation." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)

(internal quotation omitted).  Nguyen's analysis, however, is based on the notion that people

suffering from depression "often do not recognize that their condition reflects a potentially

serious mental illness."  Id.  Here, Minter realized she needed help and sought out counseling,

then failed to follow through.  That distinguishes her situation from Nguyen, making her limited

mental health treatment history a clear and convincing reason to discredit Minter's reports of her

subjective symptoms.

> F.    Summary

Although two of the ALJ's reasons do not hold up to scrutiny, the ALJ gave several other

clear and convincing reasons supported by substantial evidence in her analysis resulting in

discrediting Minter's subjective symptom testimony.  Any errors are harmless.

II.    Lay Testimony

Minter claims the ALJ erred in rejecting the lay testimony of her sister, Stephanie Sands.

Sands provided a letter in September 2009 stating that Minter goes nowhere without

Sands, including all appointments and simple trips to the store.  At times, Sands finds that Minter

is unable to leave the house to make an appointment.  Often, Sands takes Minter to the grocery store and Minter cannot get out of the car to enter the store.  Sands cooks all of Minter's meals, does her laundry, and cleans Minter's home.

The ALJ assigned little weight to Sands' opinion because it was inconsistent with the medical evidence of record.[1]

The Commissioner notes the inconsistencies between Sands' letter and Minter's ability to leave the house for work and other activities, such as going to the gym, as well as Minter's limited treatment for mental impairments.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness.  Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006).  The germane reasons must also be specific.  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).  A legitimate reason to discount lay testimony is that it conflicts with medical evidence.  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  But the ALJ cannot discredit lay testimony because it is not supported by, or corroborated by, medical evidence in the record.  Bruce, 557 F.3d at 1116.

Inconsistency with the medical evidence is a germane reason to discount a lay opinion, but that statement alone does not pass muster as a specific reason without some discussion and citation to particular medical records.  Although the ALJ did discuss the medical evidence throughout the decision, she did not specify which parts of the medical evidence were

---

[1]  I note that inconsistency with the medical record is also the primary rationale the ALJ relied on to give little weight to the opinion of treating sources F.N.P. Lallande, who opined that Minter be granted permanent medical disability because of her mental illness, and Dr. Wu, who opined that Minter would miss one or two days of work every week or two.

Page 12 - OPINION AND ORDER

inconsistent with various witnesses' statements or opinions.  I conclude the ALJ improperly

discredited Sands' statement.

III.    <u>Remedy</u>

The court has the discretion to remand the case for additional evidence and findings or to

award benefits.  <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  The court

should credit evidence and immediately award benefits if the ALJ failed to provide legally

sufficient reasons for rejecting the evidence, there are no issues to be resolved before a

determination of disability can be made, and it is clear from the record that the ALJ would be

required to find the claimant disabled if the evidence is credited.  <u>Id.</u>  If this test is satisfied,

remand for payment of benefits is warranted regardless of whether the ALJ might have

articulated a justification for rejecting the evidence.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178-79

(9th Cir. 2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the

Ninth Circuit, however.  <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003); <u>Vasquez v.</u>

<u>Astrue</u>, 572 F.3d 586, 593 (9th Cir. 2009) (recognizing split within the circuit on whether the rule

is mandatory or discretionary but not resolving the conflict).  The court has the flexibility to

remand to allow the ALJ to make further determinations, including reconsidering the credibility

of the claimant.  <u>Connett</u>, 340 F.3d at 876.  On the other hand, "in the unusual case in which it is

clear from the record that the claimant is unable to perform gainful employment in the national

economy, even though the vocational expert did not address the precise work limitations

established by the improperly discredited testimony, remand for an immediate award of benefits

is appropriate."  <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004).

"[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

There is no need to address Minter's other arguments. Anyone fully crediting the testimony of Minter's sister would agree that Minter is disabled under the Act. According to her sister, Minter is completely unable to take care of her personal needs, much less keep her attendance within the limits required by competitive employment. The ALJ's error is not harmless. Thus, I remand the case for a finding of disability.

## CONCLUSION

The decision of the Commissioner is reversed. The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this _____22nd_____ day of May, 2012.

> ___/s/ Garr M. King_____
> Garr M. King
> United States District Judge

Page 14 - OPINION AND ORDER